# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| STALLINGS & SONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:19-CV-392-WKW |
| | ) [WO] |
| EMC PROPERTY & CASUALTY COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Before the court are (1) Defendant North Pointe Insurance Company's notice of removal and motion to realign parties (Doc. # 1) and (2) the motions to remand filed by Plaintiff Stallings & Sons, Inc., and Defendant Housing Authority of the City of Montgomery (Docs. # 20, 21), and joined by Defendants Tulane Revitalization 1 L.P. and Michael's Development Company 1, L.P. (Doc. # 23). For the reasons to follow, the motion to realign parties will be denied, and the motions to remand will be granted.

## I. BACKGROUND

Stallings & Sons, Inc., served as the general contractor for the construction and renovation of a housing development project in Montgomery, Alabama, known as the "Tulane Revitalization 1" project. The project involved the new construction

of 129 residential units, a management building, private site work, and amenities. Stallings & Sons contracted with subcontractors to provide labor, insurance, materials, equipment, and services in connection with the construction of the project.

After completion of the construction, Stallings & Sons became embroiled in state-court litigation, which is still active. That litigation has resulted in multiple claims, counterclaims, and intervenor claims, as well as the consolidation of two separate suits. Briefly, the entities spearheading the revitalization project—the Housing Authority for the City of Montgomery, the developer (Michael's Development Company I, L.P.), and the project's owner (Tulane Revitalization 1, L.P.) (collectively "Tulane Project Parties")—contend that Stallings & Sons's construction completion was untimely, that the construction was defective, causing extensive water and other damage to the property, and that Stallings & Sons failed to remediate the defects. The Tulane Project Parties sue Stallings & Sons for breach of contract and negligence, among other causes of action. Stallings & Sons contends that it timely completed the project, that it obtained a certificate of substantial completion, and that it is entitled to damages as the victim of a breached contract. This multi-party, multi-claim suit was consolidated with a declaratory judgment action against Stallings & Sons for a coverage determination by two of its insurers

who are defending it under a reservation of rights.[1] (*See* Doc. # 20-1, at 6–7.) These two consolidated suits constitute the "underlying action."

The case removed to this court is a related third suit, which Stallings & Sons commenced in the Circuit Court of Montgomery County. Stallings & Sons contends that six additional insurers, which issued general liability policies either "to or for the benefit" of Stallings & Sons, also owe it coverage in the underlying action.[2] (Doc. # 1-1, at 2 (Compl.).) Stallings & Sons brings claims for breach of contract, bad faith, and a declaratory judgment with respect to its insurance coverage for a defense and indemnity in the pending underlying action. Stallings & Sons also names the Tulane Project Parties as defendants because they are necessary parties under Alabama's Declaratory Judgment Act. *See* Ala. Code § 6-6-227 ("All persons shall be made parties who have, or claim, any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.").

---

[1] The insurers are Harleysville Preferred Insurance Company and Nationwide Mutual Insurance Company. Harleysville issued Stallings & Sons a commercial general liability policy, and Nationwide issued Stallings & Sons an umbrella policy. (*See* Doc. # 20-1, at 3.)

[2] These insurers are EMC Property & Casualty Company, Starr Indemnity & Liability Company, The Cincinnati Specialty Underwriters Insurance Company, Berkley Assurance Company, North Pointe, and FCCI Insurance Group. After removal, Stallings & Sons settled with two of the insurance companies.

Defendant North Pointe Insurance Company ("North Pointe"), after obtaining consent from the other five insurance companies, removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). Although the Tulane Project Parties did not consent to removal and their joinder destroys diversity, North Pointe argues that they should be realigned as Plaintiffs. If the Tulane Project Parties are realigned, no Plaintiff would share the same state of citizenship with any Defendant. Stallings & Sons have moved to remand, arguing that realignment is not proper.

## II. STANDARD OF REVIEW

On a motion to remand, the removing party bears the burden of proving that removal jurisdiction is proper. *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013). Congress has empowered federal courts to hear cases removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court originally. *See* § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal courts properly exercise diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000 and where the action is between citizens of different states. § 1332(a)(1).

## III. DISCUSSION

The right to diversity removal requires the realignment of the defending Tulane Project Parties to the position of Plaintiffs. The convergence of the removal

and realignment issues invokes two strands of important federal interests. "On the one hand, because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) (cleaned up). "On the other hand, there exists also a strong federal preference to align the parties in line with their interests in the litigation." *Id.*

As for the resolution of realignment after removal, "the federal law determines who is plaintiff and who is defendant," and, therefore, a state statute's "procedural provisions cannot control the privilege of removal granted by the federal statute." *Id.* (quoting *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954)). Regardless of what the pleadings provide, the district court must align the parties according to their interests "as determined by 'the principal purpose of the suit' and 'the primary and controlling matter in dispute.'" *Id.* at 1314 (quoting *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941)). The facts demonstrating those interests and "forming the basis of realignment must exist at the time of filing the original suit." *Texas Pac. Coal & Oil Co. v. Mayfield*, 152 F.2d 956, 957 (5th Cir. 1946); *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981). Proper alignment of the parties precedes the decision of diversity jurisdiction. *Vestavia Hills*, 676 F.3d

at 1314; *see also Peters v. Standard Oil Co.*, 174 F.2d 162, 163 (5th Cir. 1949) (providing that the court must "work out the relation of each party to the suit according to the nature of his real interest, and then decide the question of jurisdiction.").

Relying heavily on the Eleventh Circuit's decision in *Vestavia Hills*, North Pointe argues that the Tulane Project Parties' interests align with those of Stallings & Sons because the Tulane Project Parties "will benefit from a favorable insurance coverage determination in this case particularly if Stallings is otherwise unable to pay all or part of a purported judgment against it in the Underlying Litigation." (Doc. # 54, at 6.) This argument is not persuasive, and North Pointe's reliance on *Vestavia Hills* is misplaced.

The decision in *Vestavia Hills* is an appropriate starting point because it is particularly instructive for its distinctions. In *Vestavia Hills*, a municipality won a monetary judgment in state court against a corporate defendant. When the corporation's insurer refused to pay the judgment, the municipality sued the corporation and its insurer in state court to satisfy the judgment, invoking an Alabama statutory mechanism for a judgment creditor to reach insurance proceeds. Post-removal, the district court realigned the corporation as a plaintiff. Because realignment accomplished complete diversity and the amount in controversy was met, the district court denied the municipality's motion to remand. *See* 676 F.3d

at 1312–13. The Eleventh Circuit affirmed, concluding that the interests of the municipality and the corporation "obviously" were "identical or at least materially so." *Id.* at 1314. It reasoned: "There no longer is any dispute between [the municipality] and [the corporation], and the only thing that [the corporation] could want out of this case is for [the municipality] to win." *Id.* In other words, both parties had the same goal of desiring a declaratory judgment that the insurer had to indemnify the insured for the amount of the state-court judgment.

Here, Stallings & Sons's declaratory judgment claim seeking the insuring Defendants' defense and indemnity in the underlying action is the count that implicates the Tulane Project Parties. If the Tulane Project Parties were judgment creditors with a favorable state-court judgment against Stallings & Sons, this case would be analogous to *Vestavia Hills*. But those are not the facts here. The Tulane Project Parties have not obtained a judgment against Stallings & Sons in the underlying action. Their claims are pending, and the underlying action is active.

A different interest is at stake here than in *Vestavia Hills*. "[A]n insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit." *Assurance Co. of Am. v. Legendary Home Builders, Inc.*, 305 F. Supp. 2d 1266, 1270 (S.D. Ala. 2003) (citation and internal quotation marks omitted). Because the duty to indemnify is not ripe, that duty is not presently at issue in this action. The only issue is the duty,

7

if any, of the insuring Defendants to defend Stallings & Sons in the underlying action. Conversely, the duty of indemnity, not the duty of a defense, was at issue in *Vestavia Hills*. This factual distinction is dispositive, and North Pointe's argument fails to make mention of this critical distinction.

Unlike in *Vestavia Hills*, the primary and controlling interest here is the duty to defend, and in this scenario, the interests of Stallings & Sons as the insured and of the Tulane Project Parties as the injured parties are not aligned. The Tulane Project Parties do not share Stallings & Sons's interest in obtaining the insuring Defendants' defense to the claims that they bring against Stallings & Sons and that are pending in the underlying action. (*See, e.g.*, Doc. # 21, at 4 ("MHA [Montgomery Housing Authority] has no interest in Stallings [& Sons's] obtaining any such defense against MHA's claims in the Underlying Action.").) Realignment is not appropriate because the Tulane Project Parties' and Stallings & Sons's interests are not materially identical. *See Vestavia Hills*, 676 F.3d at 1314.

In insurance declaratory judgment actions, other district courts likewise have distinguished *Vestavia Hills* and have refused to realign the injured party alongside the insured when the duty to indemnify is premature because a judgment has not yet been entered in the underlying suit. In these cases, the courts found that the injured parties and the insureds had adverse interests. As one district court put it, "Before a judgment has been entered in the underlying state case—what we might call "the

duty to defend" stage—the state-court plaintiff . . . has very little interest in seeing her adversary . . . represented—at no additional cost—by a well-funded and sophisticated insurance defense firm." *Dream Builders of S. Fla. Corp. v. Mid-Continent Cas. Co.*, No. 18-23123-CIV, 2019 WL 3821552, at *3 (S.D. Fla. Aug. 15, 2019); *see also Pearson v. Catlin Specialty Ins. Co.*, No. CV 514-60, 2015 WL 1224104, at *5 (S.D. Ga. Mar. 17, 2015) (denying realignment where the state-court plaintiff had not yet obtained a favorable judgment in the state action because the claimants and insureds were "not aligned on the issue of [the insurer]'s duty to defend"); *Sinclair v. Auto-Owners Ins. Co.*, 22 F. Supp. 3d 1257, 1262 (N.D. Ga. 2014) (finding that a federal-court plaintiff/insured seeking a declaratory judgment that the insurer had a duty to defend it in the pending underlying suit did not have interests co-extensive with those of the injured parties: The injured parties "have no interest in having [the insurer] provide a defense to [the insured] in the Underlying Action—indeed, [the injured parties] have adverse interests to Plaintiffs in that action and would probably prefer that [the insurer] not provide [the insured] with a defense in that case."); *Gulf Hauling & Constr., Inc. v. QBE Ins. Corp.*, CA 2:13-00083-C, 2013 WL 2179278, at *6 (S.D. Ala. May 20, 2013) (declining to realign parties and remanding where the underlying lawsuit was pending and the issue of the insurer's duty to defend rendered the insured's interests "adverse to the [tort claimant's interests] as to the principal purpose of this lawsuit"); *Smith v. Catlin Ins.*

9

*Co.*, 7:12–cv–04070, slip op. at 2 (N.D. Ala. Feb. 13, 2013) (distinguishing *Vestavia Hills* and remanding—where "the case has already been tried and a final judgment entered"— and finding that, because the injured party "ha[d] not yet obtained a judgment," it "ha[d] no interest" in the federal-court defendants/insurers providing the federal-court plaintiffs/insureds with a defense to the injured party's claims against them in the underlying case).

Based on the foregoing, realignment of the Tulane Project Parties as Plaintiffs is not justified. Because the Tulane Project Parties are proper Defendants, complete diversity is lacking, and this action must be remanded.

## IV. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1) Defendant North Pointe Insurance Company's motion to realign parties (Doc. # 1) is DENIED;

(2) The motions to remand filed by Plaintiff Stallings & Sons, Inc., and Defendant Housing Authority of the City of Montgomery (Docs. # 20, 21) are GRANTED;

(3) This action is REMANDED to the Circuit Court of Montgomery County, Alabama, pursuat to 28 U.S.C. § 1447(c);

(4) Stallings & Sons's unadorned request for costs under § 1447(c) is DENIED; and

(5) The Clerk of the Court is **DIRECTED** to take appropriate steps to effectuate the remand.

DONE this 31st day of March, 2020.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE